UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHONG DA WU,

      *Petitioner*,

v.                                Case No. 3:26-cv-272-JEP-LLL

WARDEN, FLORIDA BAKER
CORRECTIONAL INSTITUTE, et al.,

      *Respondents*.

_____/

## **ORDER**

Through counsel, Petitioner, an immigration detainee at Baker Correctional Institute, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 on February 10, 2026. (Doc. 1). Petitioner argues that his prolonged detention violates the Fifth Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 5-6). He asks the Court, in part, to order his release. (*Id.* at 6 ("He must be conditionally released since there is no significant likelihood of removal in the reasonably foreseeable future[.]")).

The Federal Respondents (Secretary Markwayne Mullin, Todd Blanche,[1] and Garrett J. Ripa) filed a response in opposition to the petition. (Doc. 13). According to the Federal Respondents, "the People's Republic of China has verified Petitioner's nationality, travel documents can now be issued by the Embassy, and the Petitioner is tentatively scheduled for a removal flight during the week of March 23, 202[6]." (Doc. 13 at 11; *see* Doc. 13-1 at 4). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (Doc. 11).

On March 26, 2026, the Court directed the Federal Respondents to either file a notice that Petitioner had been removed from the United States or a supplemental response addressing their removal efforts by March 31, 2026. (Doc. 17). The Court also directed Petitioner to file a reply by April 13, 2026, if he had not yet been removed from the United States. (*Id.*). The Federal Respondents filed two supplemental responses on March 31, 2026, and April 1, 2026. (Docs. 18, 19). When Petitioner's deadline passed without him filing a reply, the Court entered an order directing him to either file a reply or notice by April 21, 2026. (Doc. 20). Petitioner again failed to comply. Thus, the Court entered an order to show cause, to which Petitioner filed a response the same

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Markwayne Mullin and Todd Blanche are automatically substituted for Kristi Noem and Pamela Bondi, respectively.

day. (Docs. 21, 22). He argues that the Federal Respondents have not met their burden of showing that there is a significant likelihood of his removal in the reasonably foreseeable future. (Doc. 22).  Upon review of the parties' filings, the Court finds that the petition must be granted.

## I.

Petitioner, a citizen of China, was paroled into the United States in 2006, as a "person of Significant Public Benefit." (Doc. 1 at 1). On October 10, 2008, the Department of Homeland Security ("DHS") took custody of Petitioner and an immigration judge ordered him removed. (*See id.*; Doc. 13 at 5). On July 13, 2009, U.S. Immigration and Customs Enforcement ("ICE") released Petitioner on an Order of Supervision ("OSUP"). (Doc. 1 at 2). On June 9, 2025, ICE re-detained him. (*Id.*). According to ICE's website, Petitioner remains detained at Baker Correctional Institute.[2]

A deportation officer explains ICE's actions following Petitioner's re-detention and ICE's position with respect to Petitioner's likelihood of removal:

> On June 16, 2025, [Enforcement and Removal Operations (ERO)] obtained a copy of Petitioner's Chinese passport, issued January 13, 1993.

> On June 29, 2025, ERO submitted a Travel Document Request (TDR) to [Headquarters (HQ)] Removal and International Operations (RIO) for review.

---

[2]  *See* Online Detainee Locator System, ICE, available at https://locator.ice.gov/odls/#/search (last visited May 7, 2026).

On July 30, 2025, ERO noted the TDR remained pending.

On August 16, 2025, ERO followed up about the pending TDR.

On August 31, 2025, ERO followed up about the pending TDR.

On September 3, 2025, ERO provided a corrected TDR.

On September 6, 2025, ERO provided an updated corrected TDR.

On September 12, 2025, the TDR was approved and mailed to the Embassy of the People's Republic of China (Embassy).

On October 7, 2025, Petitioner inquired from ERO about his case status. ERO advised Petitioner that his TDR was pending at the Embassy.

On October 29, 2025, Petitioner's TDR remained pending.

On December 17, 2025, HQ RIO submitted additional supporting documents to the National Immigration Administration to continue verification efforts for Petitioner's travel documents.

On March 10, 2026, the People's Republic of China verified [P]etitioner's nationality. Travel documents can now be issued by the Embassy.

The [P]etitioner was scheduled for a removal flight during the week of March 23, 2026.

The [P]etitioner was denied entry into China and did not depart on the scheduled removal flight. He was transferred back to Jacksonville, FL from Alexandria, LA.

As of March 30, 2026, the [P]etitioner's travel documents were received and uploaded into our system.

On April 1, 2026, [the deportation officer] received clarifying information. The [P]etitioner was denied entry for the flight scheduled the week of March 23, 2026 due to aircraft capacity issues.

4

> Now that [P]etitioner's travel documents have been received, he can be scheduled for a commercial removal flight.
>
> Based on the aforementioned and continued engagement, there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future.

(Doc. 19-1 at 3-4).

## II.

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025)[3] ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'"

---

[3] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

*Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in

the reasonably foreseeable future." *Id*. If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at \*1 (M.D. Fla. Sept. 8, 2025).

## III.

The Federal Respondents do not dispute that when Petitioner filed this case, he had been in ICE custody for over six months following his order of removal. (Doc. 13 at 7). ICE re-detained Petitioner on June 9, 2025, and he filed this case 246 days later on February 10, 2026. As such, the Court finds that Petitioner's six-month period expired prior to filing this case.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 2008, but he was released on an OSUP because ICE was unable to remove him at that time. He alleges that despite his compliance with his OSUP, he was re-detained in June 2025, meaning he has now been detained for more than ten months. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut

7

[Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

While the deportation officer's declaration shows ICE has made progress in its efforts to remove Petitioner, the fact remains that Petitioner has been detained for more than four months beyond any presumptively reasonable period. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s]."). And while ICE has now procured travel documents for Petitioner and says Petitioner can be scheduled for a commercial removal flight, ICE provides no details about when such a flight may be scheduled. The Court notes that ICE originally scheduled Petitioner's flight for the week of March 23—apparently before it had secured travel documents—but Petitioner was not placed on the flight simply because of "aircraft capacity issues." The following week, ICE received Petitioner's travel documents. Now it has been more than four weeks since ICE obtained Petitioner's travel documents, but ICE provides no information regarding how long it takes to schedule a commercial removal flight, how often such flights are arranged, or any other information that would allow the Court to find that the Federal Respondents have shown a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

Based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. In light of Petitioner's timely response (Doc. 22), the order to show cause (Doc. 21) is **DISCHARGED**.

2. The Warden's motion to dismiss (Doc. 11) is **DENIED** for the same reasons stated in *Lanvin-Valdez v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-180-JEP-SJH, 2026 WL 1004569, at *2–3 (M.D. Fla. Apr. 14, 2026).

3. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim. Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall facilitate

his transportation from the detention facility by notifying his counsel when and where he can be collected.

4. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on May 8, 2026.

_____

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Counsel of Record

10